# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES

### v.

## Daniel R. PERRON
### Boatswain's Mate Second Class, U.S. Coast Guard

## CGCMS 24172

## Docket No. 1115

## 28 August 2000

Special Court-Martial convened by Commanding Officer of Enlisted Personnel, U. S. Coast Guard Academy, New London, Connecticut.  Tried at New London, Connecticut, on 2 February 1999.

| | |
|---|---|
| Military Judge: | CDR Bryan Schroder, USCG |
| Trial Counsel: | LCDR Glenn M. Sulmasy, USCG |
| Detailed Defense Counsel: | LT Matthew T. Schelp, JAGC, USNR |
| Appellate Defense Counsel: | LT Sandra K. Selman, USCGR |
| Appellate Government Counsel: | LCDR Chris P. Reilly, USCG |

## BEFORE
## PANEL FIVE
## BAUM, WESTON, McCLELLAND
Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by a special court-martial judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of possession of marijuana and two specifications of use of marijuana in violation of Article 112a of the Uniform Code of Military Justice (UCMJ).  The judge sentenced Appellant to a bad-conduct discharge (BCD), confinement for 90 days, and reduction to paygrade E-3.  The convening authority approved the sentence as adjudged, but suspended all confinement in excess of 60 days, as required by the pretrial agreement. Before this Court, Appellant has assigned and orally argued one error: that his pleas of guilty were improvident based on an honest and substantial misunderstanding of a material term of his pretrial agreement.

According to Appellant, that term of his plea bargain would have prevented financial harm to his family from the court-martial sentence.  On the face of it, the third paragraph of

the agreement's maximum sentence appendix appears to accomplish that objective by stating the following:

> Forfeiture or Fine: Any fine or forfeiture will be disapproved. In accordance with Art. 58(b) [sic], UCMJ, the convening authority agrees to waive any or all forfeitures and pay the dependents of the accused.

That provision's purpose was thwarted, however, when Appellant was placed in a non-pay status upon his confinement after trial, with the result that there were no forfeitures to be waived and no money to be sent to his dependents. Appellant learned of his situation a little over a month after being confined. At that time, his counsel ascertained that this action was based on a pay determination at the Coast Guard Human Resources Service and Information Center (the Coast Guard's pay center) that placed Appellant in a non-pay status upon his confinement due to the expiration of his enlistment prior to trial.[1] Appellant contends that at the time he agreed to plead guilty in return for limitations on his approved sentence, which included the waiver of forfeitures provision for the benefit of his family, he misunderstood the pay consequences that would occur when confined after expiration of his enlistment. Citing *U.S. v. Mitchell,* 50 M.J. 79, 82 (1999) and *U.S. v. Olson*, 25 M.J. 293 (CMA 1987), Appellant asserts that the effect of this misunderstanding on his plea bargain necessitates corrective action by this Court.

The Government, on the other hand, argues that no remedial action is necessary because Appellant received the benefit of his bargain when the convening authority sent a letter dated March 9, 1999, to the pay center stating that any forfeitures arising by operation of Article 58b, UCMJ, were waived as of February 2, 1999. That letter, which was sent the day after the convening authority was informed of Appellant's pay status in a clemency request from defense counsel, could not have had the result it directed, because there was no pay to be forfeited and, therefore, no pay for Appellant's dependents to receive. It seems to us disingenuous for the Government to contend that Appellant received the benefit of his bargain when the convening authority's letter could not cause pay to be sent to Appellant's dependents, as required by the agreement. The Government's argument boils down to the assertion that by merely sending the letter to the pay center, the convening authority met the requirements of the pretrial agreement. It is essentially an argument that the technical terms of the agreement had been fully honored by the Government, even though no forfeitures of pay were actually waived.[2] We find this argument difficult to accept, particularly since it reduces the pretrial agreement's words "and pay the dependents of the accused" to a nullity.

---

[1] The pay center determination cited the DOD Financial Management Regulation (Volume 7A, Chap 3, Para. 030207C) and a Comptroller General's opinion (54 COMPGEN 862). However, the Comptroller General's opinion does not address Appellant's situation, in which his enlistment expired before trial and he was retained on active duty for trial in a full-duty status with full pay and then subsequently confined in accordance with a court-martial sentence. Although the regulation can be read to support the conclusion that the pay center reached, it is not clear that it must be read to preclude Appellant's being paid, since he had been retained in a full-duty status before the court-martial. Nor is it clear that this regulation applies to the Coast Guard. If it does not, *Dickenson v. U.S.*, 163 Ct.Cl. 512 (1963) and *Rhoades v. U.S.*, 229 Ct.Cl. 282 (1982) suggest that Appellant was entitled to pay all along. See *Dock v. U.S.*, 27 Fed.Cl. 62 (1992).

[2] It is interesting to note that the defense counsel requested Appellant's immediate release from confinement in his letter informing the convening authority of the pay situation, which the convening authority denied. Release from confinement and restoration of Appellant to full duty would have entitled Appellant to pay and

We turn now to the assigned issue of whether Appellant misunderstood a material term of the pretrial agreement, as he contends. It is undisputed that the effect of the pretrial agreement on Appellant's pay – i.e. that it would have no effect because there would be no pay – was not understood, by the Appellant or by either counsel at trial. The question is whether the misunderstanding pertains to a material term of the agreement.

According to Rule for Courts-Martial (R.C.M.) 910(h)(3) and *U.S. v. Olson*, *supra,* "If appellant did 'not understand the material terms of the agreement' and if, thereafter, it was not conformed to his understanding, he is entitled to withdraw his guilty plea." 25 M.J. at 297. Moreover, if the agreement cannot be conformed to Appellant's understanding, it also may be possible to fashion another remedy that will suffice. *U.S. v. Olson*, 25 M.J. at 298-299; *U.S. v. Mitchell*, 50 M.J. at 82-83. Appellant asks this Court to take the latter step by disapproving the BCD. In the alternative, he asks that the findings and sentence be set aside and a rehearing ordered so that he may enter pleas with a full understanding of the consequences. The Government argues that the relief urged by Appellant should not be granted because waiver of Article 58b forfeitures was a collateral aspect of the pretrial agreement rather than a material term entitling Appellant to conforming of the agreement or withdrawal of the pleas of guilty.[3] We disagree. The government's reliance on Appellant's failure to mention his family's financial needs in his unsworn statement at trial as "the best evidence of Appellant's state of mind" as to the importance of the waiver provision is singularly unconvincing. The absence therein of reference to financial concerns may just as well reflect Appellant's belief that his pretrial agreement protected his income.

The waiver-of-automatic-forfeitures requirement was an agreed-upon term of the pretrial agreement's clause that also required disapproval of any adjudged fine or forfeiture. As such, it is clear that Appellant specifically bargained for a provision that would allow him to receive full pay and that expressly required waiver of any automatic forfeitures of that pay under Article 58b, UCMJ, so that amount would be paid to his dependents. This

thereby ameliorated the effect of the pay center's determination that Appellant was not entitled to pay during his confinement. Alternatively, allowing Appellant's release in order for him to gain immediate employment (presumably on appellate leave), as counsel requested, would also have mitigated the financial hardship for his family, but the convening authority also chose not to do that. The convening authority's action was fully within his discretion. However, by failing to seize the opportunity to mitigate the impact of this unforeseen condition, the Government is left to rely solely on the adequacy of its performance under the pretrial agreement. This position is not without its embarrassing side. If Appellant had been receiving pay subject to forfeitures, compliance with the agreement would have required waiver action by the convening authority before 16 February, fourteen days after trial, when such forfeitures would have commenced by operation of law under Article 58b, UCMJ. Yet the convening authority's letter to the pay center was sent almost a month later.

[3] In support of the argument that the waiver-of-forfeitures provision was not a material term of the pretrial agreement, the Government has submitted an affidavit from the trial counsel that expresses his opinion on this point and recounts conversations with the defense counsel which the trial counsel believes support the view that neither defense counsel nor Appellant saw the provision as material. We do not find helpful an affidavit from trial counsel expressing his assessment of the provision's lack of importance to Appellant based on the fact that the provision was not discussed until late in the negotiations. Rather than assisting in resolving issues, the affidavit is a source of potential concern to us given the inference of defense counsel disloyalty to his client that could be drawn from the trial counsel's unnecessary account of his post-trial conversation with defense counsel. Since we are granting relief to Appellant, we see no need to explore this issue.

term undeniably is a part of the agreement, and undeniably would be expected to have consequences amounting to many hundreds of dollars, in the likely event of a sentence that included a BCD and some confinement. Surely this term is material.

The Government has moved for leave to cite two newly decided cases in the Court of Appeals for the Armed Forces, *U.S. v. Williams*, __ M.J. __, 2000 CAAF LEXIS 874 (No. 99-0409 August 18, 2000) and *U.S. v. Hardcastle,* __ M.J. __, 2000 CAAF LEXIS 873 (No. 99-0632 August 18, 2000). The motion is granted, and we commend the Government for promptly moving to bring to our attention these new cases, which are very much on point but whose holdings do not support the Government's position. In each of these cases, as in our case, the pretrial agreement included a provision waiving automatic forfeitures, but the appellant went into a no-pay status in confinement, rendering the provision ineffective. In *Williams* the Court held that the plea can be held improvident when an accused pleads guilty relying on incorrect advice from his attorney on a key part of the pretrial agreement (entitlement to pay), and the military judge shares that misunderstanding and fails to correct it. In *Hardcastle*, reaching a similar result, the Court cited *U.S. v. Bedania*, 12 M.J. 373 (C.M.A. 1982), wherein it had held that a guilty plea may be found improvident "when the collateral consequences [in our case, no-pay status] are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding." *Bedania*, 12 M.J. at 376. Although the trial judge in our case did not play a part in the misunderstanding (indeed, he seems to have completely overlooked the waiver of forfeitures provision when he discussed the agreement with Appellant[4]), we think our case clearly satisfies the first of these tests: his misunderstanding flows "foreseeably and almost inexorably from the language of [the] pretrial agreement."

Both the Defense and the Government agreed at oral argument that when the pretrial agreement was formalized and later at trial, when Appellant pled guilty based on that agreement, none of the parties realized that Appellant would enter a no-pay status upon his confinement. We find that this change in Appellant's pay status caused the failure of a material term (in the words of the *Williams* case, "a key part", No. 99-0409, slip op. at 8 (CAAF August 18, 2000)) of the agreement and, because of Appellant's misunderstanding in this regard, corrective action must be taken, either by setting aside the findings of guilty and the sentence or by fashioning an appropriate alternative remedy. *U. S. v. Mitchell, supra*, makes it clear that we may take such action. In this instance we think it is appropriate to return the record to the convening authority and allow him to take corrective action.

Adequate remedial action by the convening authority could be either of the two actions requested by Appellant. Appellant requested that the BCD be set aside or, in the alternative, that the findings and sentence be set aside and a rehearing be ordered. In addition, we see

---

[4] Military judges are required to fully discuss all pretrial agreement provisions with accuseds and counsel. *U.S. v. Green*, 1 M.J. 453 (CMA 1976). Military judges would be well advised to include automatic forfeitures in post–sentencing discussion of the pretrial agreement even when the agreement does not include a provision affecting them.

another possibility. If the Coast Guard pay center assures the convening authority that Appellant would be entitled to full pay (at the reduced grade) for the period that he was confined if the convening authority disapproves all confinement, [5] then such action could remedy the failure of the agreement in this case. If there is no means of restoring full pay to Appellant, then either the BCD or the findings and sentence must be set aside.

In light of the foregoing, the convening authority's action is set aside and the record is returned for action in conformity with this opinion. The convening authority shall either set aside the findings and sentence and order a rehearing or take other remedial action as specified above. When action by the convening authority is completed, whether it includes a rehearing or otherwise, the record shall be returned to this Court for review and final action pursuant to the requirements of *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (CMA 1989).

Chief Judge BAUM and Judge WESTON concur.



For the Court

//s//
James P. Magner
Clerk of the Court

---

[5]See fn. 1 *supra*. Certainly, if Appellant's confinement were disapproved, a determination by the pay center that pay is still not due for the period of confinement based on Para. 030207C would be even more questionable.