UNITED STATES, Appellant,

v.

Eric A. BOYLAN, Lance Corporal,
U.S. Marine Corps, Appellee.

No. 98–5002.
Crim.App. No. 96–2377.

U.S. Court of Appeals for
the Armed Forces.

Argued June 2, 1998.

Decided Sept. 30, 1998.

For the Accused: *Lieutenant Robert Atta-nasio,* JAGC, USNR (argued).

For the United States: *Lieutenant Kevin S. Rosenberg,* JAGC, USNR (argued); *Commander D.H. Myers,* JAGC, USN, *Colonel Charles Wm. Dorman,* USMC, and *Lieuten-ant Commander Christian L. Reismeier,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On August 19, 1996, Lance Corporal Boy-lan was tried by a special court-martial com-posed of a military judge sitting alone at Marine Corps Air Station, Cherry Point, North Carolina. Consistent with his pleas,

he was found guilty of attempted larceny of $1,300, conspiracy to commit larceny, and larceny of $630, in violation of Articles 80, 81, and 121, Uniform Code of Military Justice, 10 USC §§ 880, 881, and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for 60 days, partial forfeitures, and reduction to the lowest enlisted grade. The convening authority approved this sentence on December 4, 1996. On September 12, 1997, the Court of Criminal Appeals, in an unpublished decision, reversed his conviction for attempted larceny, dismissed that charge, reassessed the sentence, but still affirmed the approved sentence.

This Court received, on November 17, 1997, the following issues of law certified by the Judge Advocate General of the Navy. *See* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1994). He asks:

I

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT DETERMINED THAT THE RECORD DID NOT SUPPORT APPELLEE'S PLEA OF GUILTY TO ATTEMPTED LARCENY.

II

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED, IN LIGHT OF THIS COURT'S OPINION IN *UNITED STATES V. LLOYD*, [46 MJ 19 (1997) ] IN MODIFYING THE ATTEMPTED LARCENY SPECIFICATION AND THEN FINDING THE ATTEMPTED LARCENY SPECIFICATION, AS MODIFIED, "FACIALLY DUPLICATIVE" WITH THE LARCENY.

We hold that the appellate court below erred when it determined the record of trial did not establish factual circumstances necessary to support Corporal Boylan's pleas of guilty to attempted larceny. *See generally United States v. Garcia,* 44 MJ 496 (1996). The above resolution of this question makes extended discussion of the second certified issue unnecessary. *See United States v. Neb-*

*lock,* 45 MJ 191, 197, 198–99 (1996)(factually discrete offenses).

The Court of Criminal Appeals found the following facts in this case concerning appellee's offenses:

During the factual review of his plea at trial and by stipulation the accused admitted that in consort with his wife he used the ATM [Automatic Teller Machine] card and pin number belonging to another Marine at three automatic teller machines in the vicinity of Havelock, North Carolina. Shortly before beginning their criminal enterprise, the accused's wife called the credit union and was informed the account balance was approximately $600.00, a fact she relayed to the accused. Record at 23, 26 and 29. The accused's wife then proceeded to withdraw monies from the account in various amounts. Some ATM withdrawal efforts were successful while others were not. Computer records from the credit union offered with the stipulation of fact indicate that some of the withdrawal efforts were denied because the wrong pin number was entered, because the amount sought to be withdrawn exceeded the limits for a single transaction, or because the daily maximum permitted to be withdrawn had been reached. Over several hours on 2 successive days the account was successfully looted of $630.00. This was the total amount then in the account. Record at 27.

\* \* \*

In addition to larceny of $630.00, the Government charged the misconduct as a conspiracy and as an attempted larceny. This later charge was developed by adding the sum of values from all unsuccessful efforts at the three ATMs which were interspersed among the successful withdrawal efforts. For example, if a withdrawal request was denied because the wrong pin number was entered or because the daily maximum had been reached, the transaction was recorded by the investigator in the "attempt" column. If successful, the transaction was recorded in the "actual" column. The investigator's creativity

yielded a specification of "attempted larceny" with a value of $1300.00. It is this "attempted larceny" drawn from unsuccessful efforts at the same three ATMs during the same time period from the same victim, and which the Government has otherwise alleged as a course of conduct, that gives us pause for concern.

Unpub. op. at 1–2.

The Court of Criminal Appeals then set aside the findings of guilty to attempted larceny. It said:

> The factual impossibility of stealing more than $630.00 would not necessarily bar a prosecution for an attempt to steal a greater amount if the accused believed there to be more money in the account or if he was unaware of the account balance. *See* Manual for Courts–Martial, United States (1995 ed.), Part IV, 4c(3) [hereinafter MCM]. Here the accused's responses indicate he believed the account to contain approximately $600.00, and later, $630.00. A required element of an attempt offense is that the act in question be done with the specific intent to commit a certain offense. *See* MCM, Part IV, 4b(2). *We conclude from the facts as presented during the providence inquiry and in the stipulation of fact that the accused never specifically intended to steal more than $630.00, the amount he understood to be in the account.* Thus, he should not be convicted pursuant to his plea of an attempted larceny to a greater amount from the same account.

Unpub. op. at 2–3 (emphasis added).

— — —

■ The first question we must address is whether the Court of Criminal Appeals exercised its unique factfinding power or sentence-approval power in this case. *See United States v. Claxton,* 32 MJ 159 (CMA 1991); *United States v. Cole,* 31 MJ 270 (CMA

1990). The Government asserts: "The injection of 'facts' post-trial by the Navy–Marine Corps Court of Criminal Appeals in order to create a defense or reverse a plea of guilty is not within the Court of Criminal Appeals' scope of review. *See* [*United States v.*] *Faircloth,* 45 MJ at 174." Government Brief at 7. Corporal Boylan (appellee) responds that the appellate court below set aside his conviction for attempted larceny on the basis of its unique factfinding powers under Article 66(c), UCMJ, 10 USC § 866(c)(1994).[1] We conclude that neither the Government's assertion as to the lower court's holding nor appellee's characterization in response thereto is accurate. *See Garcia,* 44 MJ at 497 (Court of Criminal Appeals holding that defense was raised during guilty-plea inquiries not finding of fact under Article 66(c)).

The opinion of the appellate court below does not expressly state that it was exercising its unique factfinding powers in this case. Admittedly, some ambiguous words were employed in the opinion which might selectively suggest that factfinding was being done. Nevertheless, a service appellate court can clearly indicate that it is exercising its unique powers when it chooses to do so. *E.g., United States v. Claxton,* 29 MJ 1032, 1033 (CGCMR 1990). Moreover, this was a guilty-plea case and, in the words of Article 66(c), there was no "evidence" to "weigh," no "credibility of witnesses" to be "judged," and no "controverted questions of fact" to "determine." Accordingly, we conclude that the Court of Criminal Appeals looked at the record, considered it as a matter of law, and concluded that the admissions of appellee did not factually establish the legal requirements for this offense. *See generally United States v. Shearer,* 44 MJ 330, 334 (1996).

■ The next question we must address is whether the record of trial contains the admissions legally necessary to establish the offense of attempted larceny, in violation of

1. This Article provides:

> "(c) In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. *In considering the record, it may weigh the evidence, judge credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.*"
> (Emphasis added.)

Articles 80 and 121. The Court of Criminal Appeals focused its concern on the question of appellee's intent to commit larceny, *i.e.*, his alleged intent to unlawfully withdraw $1,300 more than the victim had in her account. In this regard, we note that Corporal Boylan, in his stipulation of fact and in his guilty-plea responses to the military judge, admitted that he and his conspirator-spouse intended to steal $1,300 from the victim's "account if the machine had not denied the transactions." This admission satisfies the intent-to-steal requirement of Articles 80 and 121. *See United States v. Riddle*, 44 MJ 282, 287 (1996)(intent to steal pay entitlements to which appellant did not believe he was entitled).

■ The final question we must address is whether appellee's additional admissions concerning his knowledge of the $630 balance in the account raised a substantial question in fact or law as to his guilty pleas to attempted larceny. The appellate court below was correct in implying that appellee could not be found guilty of attempt if he actually believed that no more than $630 could be withdrawn from this account. *See* para. 4c(3), Part IV, Manual for Courts-Martial, United States (1995 ed.). However, it erred in concluding that such a belief should be inferred from the factual circumstances of the case at bar. *See generally United States v. Harrison*, 26 MJ 474, 476 (CMA 1988)(an appellate court reviewing a guilty plea as a matter of law cannot speculate as to the existence of factual circumstances which might give rise to a possible legal defense).

In this regard, we note that knowledge of a specific account balance, even on the same day, does not logically equate with a later belief that only that amount might be withdrawn from that account. Such an equation conflicts with the all too common experience that additional deposits, machine malfunctions, and overdraft protection are possible in the modern banking world. Here appellee, at least implicitly, admitted a belief in such banking vagaries when he stated that he and his wife intended to withdraw as much money as the machine would give. Moreover, after withdrawing $630, they attempted to withdraw an additional $10, which the machine denied. Accordingly, we conclude appellee's pleas of guilty were provident. *See* para. 4c(3)("Similarly, a[n unknowing] person who reaches into the pocket of another with intent to steal that person's billfold is guilty of attempt to commit larceny, even though the pocket is empty.").

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for further review.

Judges CRAWFORD, GIERKE, and EFFRON concur.

COX, Chief Judge (dissenting):

The problem in this case arises from the prosecution's decision to aggregate several attempted thefts into a total amount that was impossible to steal. This case has no precedential value, nor has it resulted in any meaningful relief for appellee. Because I view the action of the Court of Criminal Appeals to be fair and reasonable, based upon common sense and good judgment, I would affirm.

A rancher has 100 cows and one bull in his herd. A cattle rustler decides to steal them all, but he does not know how many cattle the rancher has. Indeed, some of the cows are expecting calves.

Over the course of a few weeks, the rustler backs up his truck—one that holds 50 cows—and steals as many cows as he can round up and load. Some nights he cannot find any; on a few nights calves are born, thus increasing the size of the herd. Finally, the rustler has rounded up and stolen 100 cows, 49 calves, and one bull. This constitutes the rancher's entire herd. However, the rustler is not certain of this fact, so he goes back to the ranch two or three more times, just to be certain no more cows have come down out of the hills. If he had found more, he would have stolen them.

Altogether, the rustler made 3 successful trips and 5 unsuccessful trips to the ranch.

How many cows did he steal? How many did he try to steal?

I have no quarrel with treating each trip to the ranch as a "discrete" offense, *i.e.,* as either a theft or an attempted theft. If this had been done, there would have been three specifications of theft of cattle, 50 each, and 5 specifications of attempted theft of 50 each. Nor do I quarrel with the decision to consolidate the charges.

However, if the prosecutor decides to consolidate the events, then in my judgment, he is limited to one charge of theft of 150 head of cattle and one charge of attempting to steal the 150 head of cattle. No matter how you analyze it, the thief only stole 150 head of cattle. If you are going to attempt to steal everything the victim owns, once you get it all, you have fulfilled the object of your attempts. And, with all due respect to my colleagues, the same is true of theft of money from an ATM. If the thief tries 10 times to get all the money out of the machine, he can be charged with getting it all and with attempting to get it all, but he cannot be charged with attempting to get twice as much as is available.

I completely agree with the commonsense decision of the Court of Criminal Appeals in the present case. This is one of those strange *SPECIAL COURTS–MARTIAL* where common sense and the law collide in order for the prosecutor to take one criminal escapade, *i.e.,* the theft of the victim's money from an ATM, and make four separate offenses out of the incident, the maximum punishment for which is already limited by the statutory limits on a special court-martial. As noted above, at least the prosecutor did not create a separate specification for each trip to the machine. In my judgment the court below was exercising the unique powers accorded unto them by Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c)(1994), to approve only those charges which, "on the basis of the entire record, should be approved." *See United States v. Foster,* 40 MJ 140, 145 n. 5 (CMA 1994). It is interesting to note that Congress did not use the term "can" be approved.

Lastly, there is one matter of concern not addressed in the majority opinion. If we sanction the practice of consolidating a number of attempts into one specification, then permit the prosecution to add up the value of goods in each attempt, there may be times when this results in changing the maximum punishment. For example, two attempts to steal a $60 item, consolidated, would be one attempt to steal $120, thus changing two attempted petty larcenies to one grand larceny. *See United States v. Mincey,* 42 MJ 376 (1995). This would make no difference under the facts of this case.